```
                  UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE
```

Daniel Scolardi, Trustee of the
Daniel Scolardi Living Revocable Trust

and

Paul and Kathleen Fowler,
     Consolidated Plaintiffs

     v.                                 Case No. 11-cv-298-SM
                                        Opinion No. 2012 DNH 129
Paul Hayward,
Paul and Kathleen Fowler,


     v.

Gary J. Wood, Esq., and
Barbara Serafini, Individually and
as Trustee of the Barbara Serafini
1999 Revocable Trust,
     Consolidated Defendants


                          **O R D E R**


     These consolidated civil cases arise out of a real estate transaction, in which Paul and Kathleen Fowler purchased property from Paul Hayward and Barbara Serafini. The property was encumbered by a mortgage deed held by Daniel Scolardi, as Trustee of the Daniel Scolardi Living Revocable Trust (the "Scolardi Trust"). The mortgage deed secured a loan from the Scolardi Trust to Hayward in the principal amount of $73,500.00. Because the Scolardi Trust claims the loan remains unpaid, the trustee

(Scolardi) has refused to discharge the mortgage that encumbers the Fowlers' recently-purchased property.

The Fowlers, joined by Gary Wood (their attorney) and Barbara Serafini (one of the sellers) move for summary judgment, asserting that they are entitled to an order compelling Scolardi, as trustee, to discharge the mortgage. Scolardi objects. For the reasons discussed, the motion is denied.

### Standard of Review

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Background**

On October 8, 2008, Daniel Scolardi, as Trustee of the Daniel Scolardi Living Revocable Trust, loaned to Paul S. Hayward the principal amount of $73,500.00, repayable with interest at a fixed rate of eighteen percent (18%) per annum. Absent demand, the loan was to be repaid in full in 24 months. During the term of the loan, Hayward was obligated to make monthly interest payments of $1,102.50. The loan was evidenced by a promissory note (document no. 26-2), subject to the terms of a loan agreement (document no. 22-1), and secured by a mortgage deed to property jointly owned by Hayward and Barbara Serafini, Trustee of the Barbara Serafini 1998 Revocable Trust (document no. 26-2). That property is known both as "Lot 57.1 Sunset Hill, Grafton County, New Hampshire," and "Lot 2 on a plan entitled 'Major Subdivision Plan, land of Barbara Serafini, Paul Hayward, Sugar Hill, New Hampshire.'" See Exhibit A to Loan Agreement (document no. 22-1) at 7. For convenience, the court will refer to it simply as "Lot 2."

According to Scolardi, an organization known as C, L and M, Inc. ("CLM") "identified this loan opportunity to [him]," Scolardi Affidavit (document no. 26-2) at para. 6, and somehow facilitated the loan that was extended to Hayward. But, he denies that he authorized CLM to act as the Trust's agent to

collect payments under the loan. Id. at para. 7. Neither the promissory note nor the loan agreement discusses CLM's role or responsibility in administering the loan, nor does either document specifically vest CLM with any authority to act as agent for the Trust or the trustee. The only reference to CLM in either document is found in the "Notices" section of the loan agreement, which provides that:

> All notices, demands and communications provided for herein or made hereunder shall be delivered, or sent by certified mail, return receipt requested, addressed in each case as follows, until some other address shall have been designated in a written notice to the other party hereto given in like manner,
>
> BORROWER(S):   PAUL S. HAYWARD
>                10 Sunset Hill Road
>                Sugar Hill, N.H. 03586
>
> SERVICER:      C, L and M, Inc.
>                8595 Southeast Palm Street 1633
>                Hobe Sound, FL 3345553 [sic]
>
> LENDER:        DANIEL SCOLARD [sic], TRUSTEE OF THE DANIEL
>                SCOLARDI LIVING REVOCABLE TRUST
>                8595 Southeast Palm Street
>                Hobe Sound, FL 33455

Id. at 5. Scolardi says he insisted that his home address in Florida be listed as the mailing address for him and CLM, so he could ensure that he would receive any notices that might otherwise be provided to a loan "servicer."

In the addendum to the loan agreement (which was executed on the same day as the loan agreement), the parties agreed as follows:

> Pursuant to paragraph 1 of the Commercial Loan Agreement a portion of the funds advanced under this Agreement may be used by the Borrower to pay administrative and other related costs incurred in this transaction. Borrower and Lender agree that the monthly payment amount of $1,102.50 shall be paid directly from the proceeds of the Loan for a period of twenty four (24) months. <u>Borrower hereby authorizes</u> the Lender and any future holder of the Note or successor in interest to Lender and <u>any servicer of the Loan</u> to pay the amount of $1,102.50 to the holder of said Note.

<u>Id</u>. at 8 (emphasis supplied). According to Scolardi, "After closing, the sole role of [CLM] was to act as the <u>agent for the borrower</u>. [CLM] held an escrow of $26,460.00. The sole authority granted to it was to pay that money to me on a monthly basis pursuant to the Addendum to the Loan Agreement." Scolardi Affidavit at para. 8 (emphasis supplied). Attorney Wood, the Fowlers, and Serafini, on the other hand, assert that the reference to CLM as "servicer" in the loan agreement vested it with at least apparent authority to act as Scolardi's agent.

Approximately six weeks after Hayward borrowed the money from the Scolardi Trust and encumbered Lot 2 with the mortgage deed, Paul and Kathleen Fowler signed an agreement to purchase the property from Hayward and Serafini for $117,000.00. In

exchange for that sum, the Fowlers were to receive a warranty deed to Lot 2, free of all liens.  As part of the transaction, Hayward and Serafini hired an attorney to represent their interests, and the Fowlers hired Attorney Gary Wood to represent theirs.  Attorney Wood acted as the "settlement agent" and, as such, determined the various parties to whom distributions would be made from the sale proceeds (e.g., the first mortgage holder; the second mortgage holder; etc.), as well as the various taxes and fees that had to be paid as part of the closing (e.g., recording fees; real estate transfer tax stamps; current use penalties; bank wire transfer fees; etc.).  See, e.g., Exhibit D to Defendants' Memorandum, Borrower's Closing Statement (document no. 22-1) at 25; Seller's Closing Statement, id. at 26.

   According to Wood, Hayward's attorney told him that CLM "was the servicer of the Scolardi mortgage."  Exhibit B to Defendants' Memorandum, Affidavit of Gary Wood, at para. 5.  And, says Wood, Ms. Serafini told him that one of the principals of CLM had "negotiated the payoff of the mortgage on behalf of the lender." Id. at para. 6.  So, believing that CLM was the Scolardi Trust's duly authorized servicing agent, Wood contacted CLM to determine the loan payoff amount.  He did not, however, contact CLM at the address specified in the loan agreement (which, because that was actually Scolardi's address, would have put the Scolardi Trust on

notice of the impending sale of Lot 2 and allowed Scolardi to make arrangements to accept the payoff on the loan). Instead, Attorney Wood contacted CLM at its New Hampshire office.

Attorney Wood says representatives of CLM informed him that the payoff on the Scolardi loan was approximately $52,600. Relying upon those representations, Wood transferred proceeds from the closing in that amount into CLM's bank account, apparently expecting that CLM would then secure a discharge of the mortgage deed to Lot 2 from the Scolardi Trust. CLM, however, never transferred those funds to Scolardi. And, Wood never obtained a discharge of the Trust's mortgage, which remains as an encumbrance on Lot 2 - hence the Fowlers' understandable displeasure.

Subsequently, the Securities and Exchange Commission charged CLM and a related entity, and their principals, with financial fraud. See, e.g., SEC v. Scott D. Farah, et al., No. 10-cv-135-PB (D.N.H. 2010), Complaint (document no. 1) ("From at least 2005, Defendants Farah and Dodge, acting through their businesses FRM and CLM, operated a fraudulent ponzi scheme that defrauded at least $10 million from at least 150 investors. The scheme involved raising investor money to fund purported loans to specific real estate projects and other businesses."). In a

7

separate criminal proceeding, those principals - Scott Farah and Donald Dodge - were charged with multiple counts of wire fraud. Both men pleaded guilty and were sentenced to lengthy terms of imprisonment.  It has, then, been demonstrated that CLM engaged in a far-reaching fraudulent financial scheme, and it is clear that the funds intended to pay off the loan were misappropriated and were not paid to the Scolardi Trust.

Pending before the court is a motion for summary judgment filed jointly by Attorney Wood, Paul and Kathleen Fowler, and Barbara Serafini, (collectively, "defendants") in which they assert that, as a matter of law, CLM was vested with authority to act as the Scolardi Trust's agent and that the loss occasioned by CLM's misappropriation should fall on the Trust.  Accordingly, they say, the "loan payoff" made to CLM constituted full payment of the Scolardi Trust's loan, and Scolardi (as trustee) is obligated to discharge the mortgage that encumbers Lot 2.  The Trust objects.

**Discussion**

Defendants advance a single argument in support of their motion for summary judgment: "As the loan servicer, [CLM] was Mr. Scolardi's agent, and the payment made to the Scolardi Trust in accordance with [CLM's] instructions by the Fowlers satisfied the

mortgage, entitling the mortgagors to a discharge in full of the mortgage obligation." Defendants' memorandum (document no. 22-1) at 3-4. Although defendants do not seriously contend that CLM was acting as the Scolardi Trust's <u>actual</u> agent, they do assert that "[a]s a matter of law, [CLM] was vested with apparent authority as an agent of Scolardi [as trustee]." <u>Id</u>. at 4.

Under New Hampshire law, whether an agency relationship exists is a question of fact. <u>See</u> <u>VanDeMark v. McDonald's Corp.</u>, 153 N.H. 753, 761 (2006); <u>Herman v. Monadnock PR-24 Training Council, Inc.</u>, 147 N.H. 754, 758 (2002). As the New Hampshire Supreme Court has observed,

> [T]he necessary factual elements to establish agency involve: (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions. . . . Like actual authority, a finding of apparent authority incorporates the three factual elements listed above and exists <u>where the principal so conducts itself as to cause a third party to reasonably believe that the agent is authorized to act</u>.

<u>Dent v. Exeter Hosp., Inc.</u>, 155 N.H. 787, 792 (2007) (citations and internal punctuation omitted) (emphasis supplied).

Here, the sole fact upon which defendants rely to establish that CLM was vested with apparent authority to act on behalf of the Scolardi Trust is the reference in the loan agreement to CLM

9

as "servicer."  See Defendants' memorandum at 4 ("Apparent authority was conferred by Scolardi when he signed the Loan Agreement designating [CLM] as the servicer.").  Based upon that reference, defendants claim that, "Attorney Wood reasonably believed that [CLM], in its capacity as servicer, had the authority to act on behalf of Scolardi, the principal."  Id.

But, several uncontested facts tend to undermine the "reasonableness" of Attorney Wood's conduct.  First, Wood concedes that he did not look at the documents evidencing the loan to Hayward, including the loan agreement.  Rather, he simply accepted the statement made by Hayward's attorney (and, perhaps, a similar statement by Ms. Serafini) that CLM was acting as Scolardi's agent.  Had Wood looked at the loan agreement, he would have seen that the mailing address listed for CLM was the same as Scolardi's - a curious fact that might well have called for further investigation, particularly before a disbursement was sent to a different address.  Moreover, as Scolardi's expert points out, Attorney Wood never made any attempt to contact Scolardi and verify that CLM was, indeed, acting as the Trust's authorized agent - something he probably should have done.  See generally Expert Report of J. Jefferson Davis, Esq. (document no. 26-3).

While the court has little doubt that CLM held itself out as the Scolardi Trust's authorized agent, that is not dispositive. The New Hampshire Supreme Court has stated that, "the focus of the apparent-authority inquiry is upon the representations of the alleged principal, not the alleged agent." Dent, 155 N.H. at 794 (citations omitted). See also Restatement (Third) of Agency § 2.03, comment c (2006) ("The doctrine [of apparent authority] applies to any set of circumstances under which it is reasonable for a third party to believe that an agent had authority, so long as the belief is traceable to manifestations of the principal. . . . An agent's success in misleading the third party as to the existence of actual authority does not in itself make the principal accountable.").

### Conclusion

For the foregoing reasons, as well as those set forth in Scolardi's memorandum in opposition to defendants' motion (document no. 26-1), the existence of genuinely disputed material facts precludes the entry of judgment as a matter of law in favor of defendants. Whether Scolardi conducted himself in such a way as to warrant Attorney Wood's apparent belief that CLM was authorized to act as the Trust's agent is a factual matter that, at least on this record, cannot be resolved as a matter of law.

Defendants' motion for summary judgment (document no. 22) is, therefore, denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 16, 2012

cc:  Stephen Lawrence Boyd, Esq.
     Edmond J. Ford, Esq.
     Richard K. McPartlin, Esq.
     Emily G. Rice, Esq.
     Frank P. Spinella, Jr., Esq.
     James C. Wheat, Esq.